[L. A. No. 29026.    In Bank.    Apr. 26, 1967.]

MARJORIE TAMMEN et al., Plaintiffs and Appellants, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

Trippet, Yoakum & Ballantyne, Oscar A. Trippet and Thomas H. Carver for Plaintiffs and Appellants.

McInnis, Focht & Fitzgerald and William T. Fitzgerald for Defendant and Respondent.

Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Defendant and Respondent.

McCOMB, J.—Plaintiffs, the widow and minor child of Dr. Tammen, appeal from an order denying their petition to file a late claim against defendant for wrongful death.

*Facts*: On February 17, 1963, Dr. Tammen's automobile struck two horses that had strayed onto State Highway 78 in San Diego County. He died the following day. Within two weeks Mrs. Tammen consulted her attorneys concerning probating Dr. Tammen's estate.

At various times insurance adjusters representing the owner of the horses talked with Mrs. Tammen, but not until July 1963 did one of the adjusters suggest to her that she might also have a claim against the City of Oceanside. She then discussed that point with her attorneys and left the matter in their hands.

On January 8, 1964, almost 11 months after the accident, plaintiffs presented a $750,000 claim to the San Diego County Board of Supervisors. The claim was based upon the asserted "failure of the San Diego County Road Department and the San Diego County Sheriff's Department to plan, construct and maintain Vista Way [where the horses were loose] and other nearby roads, so that they would not be in a dangerous and defective condition by being exposed to roaming livestock, and the [two county departments] had notice of this fact."

On January 16, 1964, the clerk of the board of supervisors notified plaintiffs that the board had decided not to act upon the claim, on the ground that it had not been filed within the period prescribed by law.

On January 22, 1964, plaintiffs applied to the board for leave to file a late claim, which application was denied.

On March 6, 1964, plaintiffs petitioned the superior court for leave to present a late claim. One of plaintiffs' attorneys filed a declaration in support of the petition, setting forth the legal complexities and investigating problems of preparing to file the claim. The county filed no objection to the petition, but counsel appeared and resisted it.

■ *Questions*: First. *Is plaintiffs' claim governed by the 1963 tort claims act?*

*Yes.* At the time of the accident, the procedure for presenting claims against public entities was set forth in former Government Code sections 710-730. Claims were required to be presented not later than the 100th day after the accrual of the cause of action (Gov. Code, § 715). If not presented within that time the superior court was authorized to grant leave to file a late claim if the public entity would not be unduly prejudiced and if the claimant was a minor during all of such time, or was physically or mentally incapacitated during such time and by reason of such fact failed to present a timely claim (Gov. Code, § 716).

The above sections were repealed in 1963, and a new and more comprehensive revision of the claims procedure was. enacted. (Gov. Code, § 900 et seq.) Section 152 of the 1963 act, effective September 20, 1963, provides in part:

"(a) This act applies to all cases of action heretofore or hereafter accruing.

"(b) Nothing in this act revives or reinstates any cause of action that, on the effective date of this act, is barred either by failure to comply with any applicable statute, charter or ordinance requiring the presentation of a claim or by failure to commence an action thereon within the period prescribed by an applicable statute of limitations.

"(c) Subject to subdivision (b), where a cause of action accrued prior to the effective date of this act and a claim thereon has not been presented prior to the effective date of this act, a claim shall be presented in compliance with this act, and for the purposes of this act such cause of action shall be deemed to have accrued on the effective date of this act."

The present proceeding is thus governed by the 1963 act, whereby plaintiffs' causes of action are deemed to have accrued on September 20, 1963 (subd. (c) above). The claim was not barred because at the time of Dr. Tammen's death on February 18, 1963, the late claims procedure of former section 716 was open to plaintiffs. They had not presented their claim

within 100 days, but they had a right to petition the superior court for leave to file a late claim within a reasonable time not to exceed one year after the expiration of 100 days from February 18, 1963. It might have been determined by the court that the petition should have been denied, whether for failure to show physical or mental incapacity or because the county would be prejudiced, but the right to present the claim had not been barred, nor had the statute of limitations run. Plaintiffs' claim was not "revived" under subdivision (b) of section 152 of the 1963 act, but was an unbarred claim expressly permitted to be presented under subdivision (c). (*Hobbs* v. *Northeast Sacramento County Sanitation Dist.*, 240 Cal.App.2d 552, 556 [49 Cal.Rptr. 606]; cf. *Manquero* v. *Turlock etc. School Dist.*, 227 Cal.App.2d 131, 133-134 [38 Cal.Rptr. 470].)

The 100-day period after September 20, 1963, allowed for presenting claims expired on December 30, 1963. Plaintiffs presented a claim to the board of supervisors on January 8, 1964, and on January 22, 1964, applied to the county for leave to present a late claim (Gov. Code, § 911.4), which application was denied (Gov. Code, § 911.6[1]). Thereafter, plaintiffs applied to the superior court for leave to present their claim (Gov. Code, § 912).

The pertinent provisions of section 912,[2] in effect when this proceeding was instituted, were: "(b) The superior court *shall* grant leave [to file a late claim] if the court finds that the *application* to the board [to file late] was made within a reasonable time not to exceed one year after the accrual of the cause of action and was denied . . . *and* that:

"(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity . . . establishes that it would be prejudiced if leave to present the claim were granted; *or*

"(2) The claimant was a minor during all of the time [100 days] for the presentation of the claim; *or*

---

[1]The grounds upon which the public entity shall grant the application under section 911.6 are substantially the same as those upon which the superior court shall grant a petition for leave to file a late claim under section 912, subdivision (b).

[2]In 1965 section 912 was repealed, and a new procedure for obtaining judicial relief is set forth in section 946.6 of the Government Code. The petition to the superior court, after rejection of the application to the public entity to present a late claim, is now a petition for relief from the need to file a claim instead of one for leave to present a late claim. If relief is granted, suit must be filed in the granting court within 30 days after the order.

"(3) The claimant was physically or mentally incapacitated [during the 100 days] and by reason of such disability failed to present a claim during such time; *or*

"(4) The claimant died before the expiration of the time specified [100 days] for the presentation of the claim.

". . . . . . . . . . . . .

"(e) The court shall make an independent determination upon the application [to the superior court]. The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition." (Italics added.)

A person seeking leave to file a late claim must show *both* (1) that the application to the board was made within a reasonable time not to exceed one year after the accrual of the cause of action *and* (2) that he falls within one of the four alternative situations set forth in subdivision (b).

The superior court denied the petition, having found that the application to the board was not made within a reasonable time and that Mrs. Tammen's failure to present her claim within 100 days was not due to either of the two causes she alleged, — mistake, inadvertence, etc. under subdivision (b) (1), or physical or mental incapacity under subdivision (b)(3).

Second. *Did the trial court abuse its discretion in denying the petition of Mrs. Tammen?*

*No.* Aside from the allegation in the petition that Mrs. Tammen was physically or mentally incapacitated, there was no evidence upon which a finding of incapacity could be made. Mrs. Tammen testified that within a few weeks after her husband's death she consulted her attorneys regarding the probate of his will and that she signed numerous papers for them from time to time thereafter; that within a month after his death, insurance adjusters called on her and offered her payment within the policy limits of the insurance carried by the owner of the horses; and that on or about July 19, 1963, one of the adjusters suggested to her that she might also have a claim against the City of Oceanside and she then discussed that point with her attorneys.

In support of the petition, Mrs. Tammen's attorney filed a declaration asserting that on or about July 19, 1963, she consulted him and authorized him to investigate the circumstances that caused Dr. Tammen's death.

Therefore, there was ample evidence from which the court

could find that Mrs. Tammen was able to attend to her business affairs with the care and diligence expected of persons in average good health and that failure to present her claim was not due to physical or mental incapacity. (Cf. *McGranahan* v. *Rio Vista etc. School Dist.*, 224 Cal.App.2d 624, 631 [12a, 12b] [36 Cal.Rptr. 798] ; *Pope* v. *County of Riverside*, 219 Cal.App. 2d 649, 652 [1b] [33 Cal.Rptr. 491].)

*Thompson* v. *County of Fresno*, 59 Cal.2d 686 [31 Cal.Rptr. 44, 381 P.2d 924], where we reversed an order denying a petition for leave to file a late claim, is not, as Mrs. Tammen argues, ''almost identical'' with the case before us. In that case, the plaintiff underwent surgery at a county hospital and was totally incapacitated for more than 100 days. Agents of the county told her that her paralysis was due to a stroke, and it was not until nearly a year later that she learned that this statement was false and that her paralysis was due to negligent performance of the operation. Being in doubt as to whether her claim should have been filed within 100 days of surgery or within 100 days of the time she learned the true cause of her injury, she alleged, as her reason for failure to file within 100 days of surgery, both physical incapacity and ignorance of the cause of her injury. The trial court felt that her physical incapacity was clearly established but that this disability was not the *reason* for her failure to file the claim; in other words, her ignorance of the cause of her injury was a contributing factor in her failure to file a timely claim. The language in the *Thompson* opinion on which Mrs. Tammen relies,—''The requirement of section 716 that the failure to present a claim within the 100-day period be 'by reason of such disability' does not mean that the disability must be the sole reason for the delay'' (p. 689 [2])—clearly has no application to the facts in the present case.

In support of the allegation that failure to present a timely claim was due to mistake, inadvertence, surprise or excusable neglect, Mrs. Tammen's counsel declared that the law on presentation of claims to public entities was ''uncertain'' as a consequence of our decision in *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], and the 1959 and 1963 legislation governing claims and actions against public entities.

The showing required as to mistake, inadvertence, etc. under section 912, subdivision (b)(1), is the same as required under section 473 of the Code of Civil Procedure for relieving a party from a default judgment. (See Van Alstyne, Cal.

Government Tort Liability (Cont. Ed. Bar) § 8.29, pp. 388-389; fn. 4, p. 711.)

In cases construing section 473 of the Code of Civil Procedure, it has been held that "Ignorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief [citations] and such facts will certainly sustain a finding denying relief. [Citations.]

"There is a somewhat tenuous line between a mistake of law and ignorance of law. The difference is probably only one of degree. In such cases all factors involved must be considered to determine whether relief should be granted or denied. While there is a strong public policy in favor of permitting a trial of a case on its merits, the determination as to whether a particular mistake of law warrants the granting of relief reposes largely in the discretion of the trial court. (Citation.) In the instant case we are not interested in the question as to whether the trial court could have granted relief based on the claimed mistake of law, but, since the trial court denied relief, only in whether such holding was within its discretion." (*Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441, 445 [3, 4] [256 P.2d 366, 257 P.2d 755].)

In *A & S Air Conditioning* v. *John J. Moore Co.,* 184 Cal.App.2d 617, 620 [7, 8] [7 Cal.Rptr. 592], the court said: "However, a mistake as to law does not require relief from default as a matter of law. (Citation.) The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law." Excusable neglect is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." (*Alderman* v. *Jacobs,* 128 Cal.App.2d 273, 276 [5] [274 P.2d 930].)

Applying the foregoing rules to the facts of the present case, the court did not abuse its discretion in finding that Mrs. Tammen was not entitled to relief because of mistake of law. Neither our decision in *Muskopf* nor the subsequent moratorium measure reinstating governmental immunity (Civ. Code, § 22.3) affected the filing of claims against local public entities for which statutory exceptions to immunity were recognized prior to *Muskopf*. As to causes of action not recognized prior to *Muskopf*, the moratorium legislation merely suspended the right to bring such actions to trial. (*Dias* v. *Eden Township Hospital Dist.,* 57 Cal.2d 502,

503 [2] [20 Cal.Rptr. 630, 370 P.2d 334]; *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488, 493-494 [5], 496-497 [12] [20 Cal.Rptr. 621, 370 P.2d 325].) These two cases were decided on April 4, 1962, well over a year before counsel undertook an investigation of Mrs. Tammen's claim, and the Government Code prescribed the procedure for filing claims.

█ Another assertion in counsel's declaration in support of the petition on the ground of mistake, inadvertence, surprise or excusable neglect was that "certain aspects of said accident, particularly the relationship between the City of Oceanside, the County of San Diego and the State of California, on the safe keeping and maintenance of Highway 78 was not ascertainable and was not discovered until the month of December 1963."

The above statement, while uncontradicted by the county, may well have been given little or no weight by the trial court, and the court was not bound to accept it as true. In *Lohman* v. *Lohman,* 29 Cal.2d 144, 149 [5] [173 P.2d 657], we held that "a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, and this rule applies to an affidavit."

The general rule is that "the unimpeached and uncontradicted testimony of a witness, not inherently improbable, cannot be arbitrarily disregarded and should be accepted as true by the trier of fact. [Citations.] The above rule, however, is subject to many exceptions firmly established in the decisions." (*Camp* v. *Ortega,* 209 Cal.App.2d 275, 281-282 [1] [25 Cal.Rptr. 837].) The court in *Camp* reviewed the exceptions to the general rule where it has been held that uncontradicted testimony may be disbelieved because there are so many omissions in a witness' account of a particular transaction or of his own conduct as to discredit his whole story; that the testimony may be inherently improbable due to uncertainty or interest or bias of a witness; and that the accuracy of positive assertions giving a wrong coloring to material facts may be doubted and rejected.

There was evidence that both Mrs. Tammen and counsel knew as early as July 19, 1963, that there was a possibility of a claim against the *city.* It was known that Highway 78, where the accident occurred, was a *state* highway. An inquiry from the governing body of the city or the department of public works as to the responsibility for the maintenance of the highway would have disclosed whether some cooperative

agreement existed to which the county was a party.[3] It stretches one's credulity to believe that this information could not have been ascertained through the exercise of reasonable diligence between July 19, 1963, and the "month of December."

■ If counsel was surprised to discover in the month of December that the County of San Diego was in some way responsible for the asserted dangerous and defective condition of the state highway, it is not the kind of surprise that will relieve his client from default. The "surprise" contemplated by section 473 of the Code of Civil Procedure is some condition or situation in which a party is unexpectedly placed to his injury, without any fault of his own, under circumstances which he was not reasonably called upon to anticipate and which ordinary foresight could not have guarded against. Nor is such conduct that of a reasonably prudent person under the same circumstances, so as to be regarded as excusable neglect. (*Baratti* v. *Baratti*, 109 Cal.App.2d 917, 921 [6, 7] [242 P.2d 22].) ■ It is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties or their attorneys in the performance of the latter's obligation to their clients. (*Hummel* v. *Hummel,* 161 Cal.App.2d 272, 277 [4] [326 P.2d 542].) The court therefore did not act arbitrarily in disbelieving that the identity of the public entities responsible for the condition of the state highway could not have been discovered until the indeterminate "month of December."

The county was not required to sustain its burden of proof that it would be prejudiced by a late filing until Mrs. Tammen had satisfied the court that her failure was due to the causes she alleged.

Since Mrs. Tammen did not fall within any of the four alternative situations entitling her to relief, it is unnecessary to discuss whether her application for permission to file late was made within a reasonable time.

The facts in this case are distinguishable from *Viles* v. *State of California, ante,* p. 24 [56 Cal.Rptr. 666, 423 P.2d 818], where we reversed the trial court's order denying relief. The rationale in *Viles* was that the plaintiff made a reasonable

[3]Section 130 of the Streets and Highways Code provides that the department of public works "and any county, city or joint highway district, or any of them, may enter into a contract in respect to the proportion of the expense of the acquisition, construction, improvement or maintenance of any state highway to be borne by the respective parties to such contract."

mistake of law in his good-faith belief that the same statute of limitations applied in an action against a public entity as against a private person and for that reason failed to present a timely claim.

In the present case, however, the mistakes through which Mrs. Tammen claims relief are those which could have been avoided through the exercise of reasonable diligence. Mrs. Tammen was represented by counsel; Mr. Viles was not; and in determining whether a person is entitled to relief the controlling factor is the reasonableness of the misconception of the law under the circumstances in each particular case.

For example, as we are holding now, what is a reasonable time for a minor to act is not reasonable for an adult. Similarly, a mistake of law may be excusable when made by a layman but not when made by an attorney.

While counsel for Mrs. Tammen also asserted in his declaration in support of her petition that one of the reasons for failure to file a claim within the time prescribed was the unsettled condition of the law applicable to the filing of claims against public entities following *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211, we determined that since cases decided almost a year before Dr. Tammen's death made it clear that the procedural necessity for filing claims was not affected, there was no justification for lack of determination of the correct law under the circumstances.

Third. *Did the court abuse its discretion in denying the petition of the minor?*

*Yes.* The language of the statute is mandatory, in that the superior court *shall* grant relief if it finds that the minor's application to the board was made within a reasonable time not to exceed one year after the accrual of the cause of action.

The latest date on which the minor could have applied for leave to file a late claim was September 21, 1964. As heretofore noted, he presented a claim on January 8, 1964, and, after being notified that the board took no action on the claim on the grounds that it was filed too late, made application on or about January 22, 1964, for leave to present a late claim.

The Legislature's intent not to require strict adherence to inflexible time limits is manifested by its providing both administrative and judicial remedies for persons under a disability or excusably neglectful who fail to comply with the 100-day period, and its intent to further protect the rights of minors is evinced in the more liberal 1963 claims act.

Under former section 716, leave to present a claim after the statutory time limit expired was authorized only on a finding by the court that the public entity would not be unduly prejudiced thereby. Under the 1963 act, where the claimant is a minor, it is wholly immaterial that the public entity will be prejudiced by the late filing, and the only determination for the court is whether the minor acted diligently in seeking relief from his failure to file within the 100 days.

In view of the policy of the law toward liberal construction of remedial statutes for the protection of persons within their purview and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute (*Gonzales* v. *County of Merced*, 214 Cal.App.2d 761, 765 [29 Cal. Rptr. 675], quoting from *Barra* v. *Port of New York Authority*, 192 N.Y.S.2d 838, 840 [1]), we are of the opinion that the court abused its discretion in denying the petition of the minor claimant. As the court said in *Morrill* v. *City of Santa Monica*, 223 Cal.App.2d 703, 708 [3] [35 Cal.Rptr. 924], "The language of the sections referred to [former §§ 715-716] was not enacted to penalize minors or to deprive them of their rights in cases where adults may have slept on their rights— quite to the contrary the statutes are to protect minors."

Fourth. *Were plaintiffs prejudiced by the order denying their motion to compel defendant to answer written interrogatories?*

*No.* Plaintiffs surmised that the county rejected all claims over $5,000, and they argue that the county is therefore estopped from asserting that their claim was not timely filed.[4]

Since we have decided that the minor's petition should have been granted, this question affects only Mrs. Tammen's motion. The contention, however, is without merit, as estoppel requires some affirmative representation or acts by the public agency or its representatives inducing reliance by the claimant. (*Rand* v. *Andreatta*, 60 Cal.2d 846, 849 [2] [36 Cal.Rptr. 846, 389 P.2d 382] and cited cases; *McGranahan* v.

---

[4]The interrogatories were: "1: The number of claims filed with the County of San Diego during the period from January 1, 1959, to February 28, 1964, for damages caused by personal injury or wrongful death, in an amount exceeding $5,000.00. 2: The number of such claims that were paid by the County of San Diego, in an amount in excess of $5,000.00, prior to the filing of a Complaint. 3: The dates of each instance on which the Board of Supervisors authorized payment of a claim for personal injury or wrongful death in excess of $5,000.00, and the name and address of the person to whom such payment would be made."

*Rio Vista etc. School Dist., supra,* 224 Cal.App.2d 624, 630 [11]; 1 Witkin, Cal. Procedure (1954) Actions, § 70 [1965 Supp. p. 234].)    At no time did Mrs. Tammen allege that she was induced by any representations of the county to delay the filing of her claim or that she relied on action taken by the county on any other claims.

It was also urged that rejection of all claims over $5,000 would have demonstrated that the county ignored the purpose of the claims statutes, i.e., to give notice and opportunity to investigate and settle meritorious claims without litigation. Had the answers to the interrogatories revealed that no claims over $5,000 were paid by the county prior to the filing of a complaint, this fact would not prove that the county had not investigated the claims and rejected them as unmeritorious.

Fifth. *Does the statutory requirement for presenting claims to a public entity before suit may be brought violate the constitutional guarantees of due process and equal protection of the laws?*

*No.* In *Dias* v. *Eden Township Hospital Dist., supra,* 57 Cal.2d 502, 504 [4], we said: "Public agencies, generally speaking, afford a proper subject for legislative classification." These constitutional arguments were also rejected in *Wadley* v. *County of Los Angeles,* 205 Cal.App.2d 668, 672-673 [4a, 4b] [23 Cal.Rptr. 154].

The order is affirmed insofar as it denied the petition of Marjorie Tammen and reversed as to the minor Stephan Scot Tammen, plaintiffs to recover costs on appeal.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.