[No. F005205. Fifth Dist. Apr. 28, 1986.]

BENNIE BERTORELLI, Plaintiff and Appellant, v.
CITY OF TULARE, Defendant and Respondent.

434

COUNSEL

Christenson, Kralowec & Roper and Robert D. Christenson for Plaintiff and Appellant.

Hurlbutt, Clevenger, Long & Vortmann and E. Warren Gubler for Defendant and Respondent.

OPINION

WOOLPERT, J.—■ ■ ■ ■ We are asked to reverse a trial court order denying a Government Code section 946.6[1] petition for relief from

---

[1]All statutory references are to the Government Code unless otherwise indicated.

the governmental tort claims statute (§ 945.4)[2] under circumstances which argue for relief, but do not fit any single indisputable rule of law compelling reversal. During the 100-day claim period after a motor vehicle accident involving a municipal truck, an insurance company filed a technically adequate subrogation claim seeking recovery for property damage on its own behalf and that of its insured. The insured's personal injury claim was not, however, mentioned. Simultaneously an insurance adjuster for the city approached the injured party and, during the claim period, the two engaged in "continuous discussions." Even after the claim period expired, the adjuster sought to settle the "personal injury claim." Only then did the injured party contact an attorney. While the adjuster apparently never mentioned a claim requirement to the injured party, there was no evidence the adjuster sought to gain any advantage by the passage of time. We must now determine whether these circumstances will excuse the injured party's failure to timely file a formal claim.

We hold that where there is undisputed evidence of ongoing settlement discussions within the 100-day period between the injured party and an adjuster or other agent for a public entity, the injured party's failure to timely file a formal claim may, under some circumstances, be excused even though the injured party made no attempt to employ counsel.

FACTS

In his petition for relief, appellant Bennie Bertorelli alleged he presented an application for leave to present a late claim for damages to the Tulare City Council on May 23, 1984, which the Tulare City Council in turn rejected on June 5, 1984. Bertorelli further alleged his failure to present a timely claim was due to mistake, inadvertence, surprise and excusable neglect.

In a declaration attached as an exhibit to his petition, Bertorelli stated: "2. I was injured in an accident occurring on November 28, 1983 involving myself and a truck owned by the City of Tulare. [¶] 3. Shortly after the accident, I was approached by William D. Terry, adjustor of Adjustco, Inc., who stated he represented the City of Tulare in this matter. Within a few weeks after the accident, through Mr. Terry, I was paid $4,000.00 for the loss of my pick-up. On March 29, 1984, Mr. Terry sent me a letter discussing possible settlement of the personal injury in this matter.[3] [¶] 4. I

---

[2]An order denying a petition for leave to file a late claim under section 946.6 is appealable. (*Rivera* v. *City of Carson* (1981) 117 Cal.App.3d 718, 723, fn. 2 [173 Cal.Rptr. 4].)

[3]The letter read: "Dear Mr. Bertorelli: [¶] We recently discussed settlement of your personal injury claim resul[t]ing in the above dated accident. We would please contact the undersigned so that we can set up an appointment to again meet and hopefully reach an agreement on the claim. Thank you for your cooperation."

did not know that I had to make a 100-day's claim. From the beginning of the accident I was in continuous discussion with the representative for the city, Mr. Terry. I was never informed that I had to file a 100-day's claim. Only upon first discussion with my attorney in April 1984 did I find out a 100-day's claim probably was required."

As stated above, Bertorelli contacted an attorney, Robert Christenson, in April 1984. Two weeks later, Christenson telephoned Terry about the city's requirement to file a late claim. In his declaration dated May 23, 1984, Christenson added: "Only until recently was I informed that an application for a late claim was required by the City. Mr. Terry and I are still negotiating this matter. I am acquiring medical reports and other information for him pursuant to his request." Attorney Christenson filed the application for leave 43 days after his first meeting with Bertorelli.

Respondent City of Tulare (Tulare) opposed the section 946.6 petition for relief on the following grounds: (1) ignorance of the 100-day claim requirement did not constitute mistake, inadvertence, surprise or excusable neglect sufficient to cure a failure to present a timely claim under section 911.2; (2) settlement negotiations did not commence until at least 125 days after the accident and therefore Bertorelli could not contend Tulare's conduct in any way misled him into not presenting a timely claim; and (3) both petitioner and his counsel failed to exercise due diligence in presenting the claim in a timely fashion. With its opposition, Tulare attached a copy of a letter to Tulare from the subrogation department of Bertorelli's insurance company making a claim for $3,499.50. The letter purportedly established that Bertorelli's insurance company, not Tulare, paid the property damage claim.

The trial court denied without comment Bertorelli's petition for relief.

### DID THE LOWER COURT ABUSE ITS DISCRETION BY DENYING THE PETITION?

For a court to grant a petitioner relief for failure to present a claim within the 100-day limit of section 911.2, it must find, under circumstances pertinent to this case: "[T]he application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that: (1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes that it would be prejudiced if the court relieves the petitioner from the provisions of Section 945.4; or . . . ." (§ 946.6, subd. (c).)

 Bertorelli contends the evidence supported findings consistent with section 946.6, subdivision (c). He concludes the trial court abused its discretion by denying his petition.

 A trial court's order granting or denying a petition under section 946.6 is subject to the same standard of review used in relief from default proceedings. (*Viles* v. *State of California* (1967) 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818].)

"Where, as here, the trial court denies the motion for relief from default, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. [Citation.] Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails. [Citation.] Doubts are resolved in favor of the application for relief from default [citation], and reversal of an order denying relief results [citation]. Reversal is particularly appropriate where relieving the default will not seriously prejudice the opposing party. [Citations.]" (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 235 [211 Cal.Rptr. 416, 695 P.2d 713].) In *Elston* the state Supreme Court held the trial court should have granted relief to a party whose attorney failed to respond to requests for admissions. The requests had been received in the office and then misplaced; however, the attorney was unaware of those facts.

Reversal may also be appropriate when petitioner's *uncontradicted* evidence establishes adequate cause for relief. (*Viles* v. *State of California, supra,* 66 Cal.2d at p. 28.)

 In evaluating adequate cause for relief, we are guided, and we take this opportunity to remind trial courts they should likewise be guided, by the following general rules:

(1) "Section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary claimant." (*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435 [197 Cal.Rptr. 601, 673 P.2d 271].)

(2) Relief from the 100-day limit is granted under the same showing as is required for relief under section 473 of the Code of Civil Procedure. (*Viles* v. *State of California, supra,* 66 Cal.2d at p. 29.)

(3) It is "the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions [to favor] granting relief unless absolutely forbidden by statute [citations] . . . ." (*Id.,* at pp. 32-33.)

■ The following language from a decision predating *Viles* reflects the "well-recognized policy" and "modern trend of judicial decisions": "[A] city, in a proper case, may be estopped from relying on the defense of non or late compliance with the statute, and . . . substantial compliance is all that is required. *The old doctrine of strict and literal compliance, with its attendant harsh and unfair results, has disappeared from our law.*" (*Cruise v. City & County of San Francisco* (1951) 101 Cal.App.2d 558, 563 [225 P.2d 988], italics added.)

■ The foregoing general rules counsel liberal construction of the governmental tort claim statute. Nevertheless, courts have developed additional rules to deal with specific instances of less than strict compliance with the tort claim statutes. ■ For instance, mistake of law based *solely* on ignorance of the 100-day claim requirement is not enough.

"Mere ignorance of the law, at least where coupled with negligence in failing to look it up, is not sufficient cause to allow a petitioner to file a late claim against a public entity (*Tammen* v. *County of San Diego*, 66 Cal.2d 468, 476 [58 Cal.Rptr. 249, 426 P.2d 753]; *Security Truck Line* v. *City of Monterey*, 117 Cal.App.2d 441, 445 [256 P.2d 366, 257 P.2d 755])." (*Martin* v. *City of Madera* (1968) 265 Cal.App.2d 76, 79 [70 Cal.Rptr. 908].)

■ Moreover, a petitioner may not successfully argue excusable neglect when he fails to take *any* action in pursuit of the claim within the 100-day period. "[T]he claimant must at a minimum make a diligent effort to obtain legal counsel within 100 days after the accrual of the cause of action. . . . The reasonable and prudent course of conduct under the circumstances of this case was to seek legal counsel." (*Ebersol* v. *Cowan, supra*, 35 Cal.3d at p. 439.)

■ Yet, these specific rules are not absolutes. *Ebersol* does not hold that it will always be inexcusable neglect when the petitioner fails to obtain the advice of counsel within the 100-day period. The opinion distinguishes between the lay person who fails to do anything during the 100 days after the claim accrues and the person who acts diligently but unsuccessfully to retain legal counsel. ■ The court reaches its holding only after applying the principal rule: "Excusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances." (*Ebersol* v. *Cowan, supra*, 35 Cal.3d at p. 435.) Thus, even the failure to obtain legal advice will be excused when a different course of action is reasonably prudent. Circumstances which would "trap the unwary" may suffice.

■ In this case, Bertorelli did not obtain legal counsel within the 100-day period. He emphasized his ignorance of the law as well as his "contin-

uous" contact during that period with the adjuster representing the city's insurance carrier. Given *Martin* and *Ebersol,* what effect does continuous discussion between the adjuster and Bertorelli during the 100-day period have on his petition for relief when the adjuster provides no notice of the claim requirement?

"Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. [Citation.] An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought." (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 690.) The insurer in *Industrial Indem. Co.* sought considerable information and there were delays. However, when the injured party would comment that she ought to see an attorney, the insurer would respond, "Don't worry about it." Here, Bertorelli's declaration does not refer to delays or footdragging by the adjuster.

Nonetheless, conduct on behalf of a public agency, which would induce a reasonably prudent person to avoid seeking legal advice or personally commencing litigation, may estop the public agency from asserting a claims defense: "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' [Citation.]" (*Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349-350 [159 P.2d 24].)

In the usual case, estoppel is a question of fact to be resolved by the trier of facts. However, when "the facts are undisputed, the existence of an estoppel is a question of law." (*Cal. Cigarette Concessions* v. *City of L.A.* (1960) 53 Cal.2d 865, 868 [3 Cal.Rptr. 675, 350 P.2d 715].)

We note with interest that Tulare did not offer any declarations by its adjuster or others to contradict Bertorelli's evidence. The unsworn statement of Tulare's counsel, that settlement discussions did not commence until the time of the March 29, 1984, letter, was not evidence and, on the face of the letter, was untrue. The March 29 letter verifies there had been at least one prior settlement discussion between the adjuster and Bertorelli. In addition, the subrogation letter dated January 19, 1984, was negative evidence at best. It constituted a proper claim for property damage arising from the same accident. Petitioner, as well as his insurance company, jointly claimed certain property-related losses were the city's responsibility. There-

fore the city was on proper notice of the accident and at least one potential cause of action.

Thus, we must rely on petitioner's declarations and Tulare's admission of a timely property damage claim. While those declarations "could have been more explicit" (*Elston* v. *City of Turlock, supra,* 38 Cal.3d at p. 234) regarding the extent and nature of the "continuous discussion," Tulare did not offer evidence to contradict Bertorelli's statements. Again using the words of our high court: "The [City] has not submitted any declarations or other factual basis for disbelieving the proffered evidence. We are not therefore persuaded that we should disregard any of the evidence submitted by [Mr. Bertorelli]. To do so, we believe, would be arbitrary." (*Ebersol* v. *Cowan, supra,* 35 Cal.3d 427, 439-440.)

The reasonable inference of Bertorelli's declaration was that the two men discussed possible settlement throughout the 100-day period. Moreover, the adjuster in his March 29, 1984, letter specifically referred to "your personal injury claim." Thus continuous settlement negotiations grounded on the public entity's knowledge of not only a property damage claim, but apparently also a personal injury claim, could induce a reasonably prudent person to rely on the continued state of affairs without seeking counsel. A reasonably prudent person would believe that nothing further need be done to preserve his or her claim.

In this regard we also note: "The purpose of the statute requiring presentation of claims is to give the governmental entity notice and an opportunity to investigate and settle meritorious claims without litigation[.]" (*Viles* v. *State of California, supra,* 66 Cal.2d at p. 32.) When determining whether relief should be given for failure to timely file a claim, it is significant that the public agency has investigated the accident soon after its occurrence and cannot show any prejudice due to the lack of a formal claim. (*Ibid.*) In this case Tulare cannot show prejudice. It had timely notice of the property damage claim. Although it could say its investigative effort was directed to the property damage claim, the adjuster's own words demonstrated Tulare also investigated the personal injury claim for settlement purposes, inferably during the 100-day period.

Tulare argues that the adjuster's post 100-day letter concerned contacts made after the claim period expired. Even if we disregard the contents of the letter to the contrary and make that assumption, it remains unhelpful to the city's case. The letter was evidence of a course of conduct which was inconsistent with treating the "claim for personal injuries" as no longer viable and "brought into play elements necessary to create [an] equitable estoppel." (*Denham* v. *County of Los Angeles* (1968) 259 Cal.App.2d 860,

866 [66 Cal.Rptr. 922].) In *Denham* a public agency sent a letter after the automatic rejection time period had expired and was held bound by its appearance of declaring a new time period for action. The court stated in passing: "Defendant could have stood pat without taking any action whatsoever and no estoppel would have arisen." (*Ibid.*) In our case the letter expressly acknowledged and continued a course of action. We therefore conclude Bertorelli's conduct was excusable under the circumstances.[4]

■ Tulare also contends once Bertorelli retained counsel, too much time passed before that attorney sought the court's relief. We disagree. The basis for the initial default in the claim procedures was the ongoing settlement discussion. Bertorelli's counsel filed a declaration indicating that he was trying to satisfy the adjuster's request for medical information. Counsel further inquired through the adjuster whether Tulare would require the filing of a late claim. This was consistent with the ongoing attempts to settle the case without litigation. A more prudent course of action would be to formally seek permission to file a late claim, while pursuing settlement.

Obviously, if presented with good cause, late claims must be accepted; by informal action the same result follows in an estoppel relationship. (*Denham* v. *County of Los Angeles, supra,* 259 Cal.App.2d 860.)

"It is only when a substantial period for instituting proceedings supervened after expiration of the delay engendered by a party that his conduct or representations will not estop him from asserting the bar of the statute . . . . A party has a reasonable time in which to bring his action after the estoppel has expired." (*Industrial Indem. Co.* v. *Ind. Acc. Com., supra,* 115 Cal.App.2d at p. 690.)

We note again that Tulare filed no declaration by the adjuster. Tulare thereby failed to contradict the attorney's allegation of continuing negotiations and inquiry into whether compliance with Tulare's claim procedure would be necessary. It was not unreasonable to await response to the request which had been made in good faith while negotiations were being actively pursued. No showing of prejudice from the passage of time could be made. Finally, no declaration was filed showing the adjuster lacked authority to act on behalf of Tulare.

---

[4]We do not suggest this result will follow in every case in which the adjuster contacts the potential claimant within the claim period. Also, we add that the uncertainty which may result from such early contacts may be avoided if an adjuster or other agent for the public entity gives the injured party timely written notice of the claim period. Such affirmative action would not unfairly burden the public agency which chooses to speedily negotiate with an unrepresented potential claimant.

The judgment is reversed. Appellant to recover costs on appeal.

Franson, Acting P. J., and Hamlin, J., concurred.