[No. G034755. Fourth Dist., Div. Three. Nov. 30, 2005.]

PEOPLE ex rel. BILL LOCKYER as Attorney General, etc., Plaintiff and Respondent, v.
HARPREET BRAR, Defendant and Appellant.

660

COUNSEL

Harpreet Brar, in pro. per., for Defendant and Appellant.

Bill Lockyer, Attorney General, Albert Norman Shelden, Assistant Attorney General, and Howard Wayne, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SILLS, P. J.—

## I.  *Background*

On July 8, 2003, in the wake of the Trevor Law Group scandal, California's Attorney General sued attorney Harpreet Brar to make him stop filing similar shakedown lawsuits against small businesses under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

Brar certainly knew of the litigation brought against him by the Attorney General. He demurred to the complaint, the demurrer was overruled, and Brar was given 15 days in which to answer. But instead of answering, Brar filed a motion to strike under the anti-SLAPP statute.

The motion to strike was denied, but it bought time. It enabled Brar to delay trial court proceedings by appealing from the denial order. As we explained in a published opinion arising out of the case (*People ex rel.*

*Lockyer v. Brar* (2004) 115 Cal.App.4th 1315 [9 Cal.Rptr.3d 844]), parties do indeed have the right to appeal from orders denying anti-SLAPP motions; and, as we concluded in *Brar* (and as was later definitively held by our Supreme Court in *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 [25 Cal.Rptr.3d 298]), any appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the causes of action affected by the motion. In effect, an anti-SLAPP motion is a means of unilaterally imposing at least some delay on proceedings.

But if the right to an automatic stay is abused by appeals frivolous on their face, matters on appeal can be speeded up by summary dismissal. Since Brar's appeal fit that category, this court summarily dismissed his appeal as frivolous at a "glance." As we put it in the opinion, dismissal was necessary to prevent "abuse of the anti-SLAPP statute to buy time from the day of reckoning in the trial court." (*People ex rel. Lockyer v. Brar, supra,* 115 Cal.App.4th at p. 1319.)

## II. *The Default*

With the summary dismissal of the appeal in late February, and with his initial demurrer having already been overruled, Brar was faced with the task of actually answering the complaint. No answer, however, ever made it into the trial court file, and so, on May 27, 2004, the Attorney General filed a request for entry of default.

Brar knew of the default no later than September 6, 2004, since he has admitted actually receiving a memorandum for setting the hearing to prove up the default on that date. But Brar waited more than three weeks (until September 30), to even go to the superior court and confirm that no answer had been filed, and waited another month after that (until October 26), to bring a motion to set aside the default under Code of Civil Procedure section 473, subdivision (b).[1] In the meantime, on October 13, 2004, the court entered a final judgment of default, including a permanent injunction against Brar's bringing unfair competition law and false advertising lawsuits. The judgment included $1,787,500 in civil penalties and about $10,000 in restitution to specified nail salon owners.

## III. *The Set Aside Motion*

What was Brar's excuse? Brar's motion to set aside rested on the assertion that he attempted to file an answer, which he left in his *home mailbox* on

---

[1] The statute provides that a court "may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

March 13, 2004, but the answer was (apparently) stolen. This claim is largely repeated in the appeal we now consider.

The standard of review for Brar's set aside motion is abuse of discretion. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597–598 [153 Cal.Rptr. 423, 591 P.2d 911]; *Hu v. Fang* (2002) 104 Cal.App.4th 61, 64 [127 Cal.Rptr.2d 756].) Moreover, all presumptions will be made in favor of the correctness of the order, and the burden of showing abuse is on the appellant. (*Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921 [242 P.2d 22].) This case does not implicate any of the mandatory provisions of Code of Civil Procedure section 473, subdivision (b) concerning an attorney's affidavit of fault.

We affirm the denial order because the trial court was well within its discretion to conclude that Brar had not shown any *excusable* neglect or genuine surprise, mistake or inadvertence.

■ Of course, trial pleadings can indeed be lost in the mail. (See *Hallett v. Slaughter* (1943) 22 Cal.2d 552 [140 P.2d 3]). Then again, a claim of lost mail is not grounds for *automatic* relief from a default judgment. (See *Lint v. Chisholm* (1981) 121 Cal.App.3d 615, 620 [177 Cal.Rptr. 314] [lost mail due to attorney's "overwhelming domestic problems" is not surprise or excusable neglect under Code Civ. Proc., § 473].)

Here, in his supporting declaration, Brar provided the trial court with a series of anecdotes suggesting mail theft from his home mailbox and from other mailboxes in his neighborhood, but—and this is important—without specifying any dates other than vaguely around the summer of 2004. (Here are the most substantive statements from his declaration: "A check made payable to 'Parenting' (Magazine) for 15 dollars was removed from the mailbox and forged with a new name and amount of '615.00' and cashed. . . . [¶] Defendant is aware that other members in his community have had their mail stolen on numerous occasions. [¶] One resident has even seen a strange car approach the mailboxes across the street from his house at 2:00 a.m. and remove mail . . . . [¶] Over the summer months the mail theft rapidly increased. [¶] Defendant had his electricity disconnected on one occasion, his telephone disconnected on one occasion, and his satellite television disconnected on two occasions because he did not receive any bills or notices from the utility providers. Defendant believes the bills and or notices must have been stolen from his mailbox.")

■ Given Brar's refusal to pin himself down on a timeframe for the mailbox thefts, the trial court was thus justified in concluding, at the very least, that Brar knew of the risks of putting mail out for collection in his

neighborhood *prior* to putting his answer in what was a remarkably theft-prone mailbox, and thus proceeded without due regard for a known risk. If Brar had really been diligent about his answer given the supposed likelihood of mail theft in his neighborhood, he could have driven to a local post office and put the envelope inside a mailbox himself.

Alternatively, as the Attorney General suggests, given the vagueness of this declaration, the trial court could reasonably conclude that Brar was simply being untruthful in asserting a story that could not be disproved. In that regard, we note that in his opening brief Brar states, "At no time until after the Appellant learned of the default did he have reason to believe that his mail was being stolen." (Appellant's opening brief at p. 12.) And yet Brar's own declaration in support of his motion states that, "Over the summer months the mail theft rapidly increased," while also saying that Brar received a notice related to the default on September 6. That is, the chronology doesn't make sense. The trial judge was asked to believe that mail theft was increasing over the summer months, but Brar supposedly had no reason to believe that his mail was being stolen prior to September 6 (almost the end of summer). The trial court would have been justified in not crediting the mail theft story at face value.

■ Finally, even assuming that Brar were telling the truth in his declaration, if Brar were convinced he had a meritorious defense to the Attorney General's suit, he surely would have checked up on whether his answer had been filed when, after a few weeks, no conformed copy of his answer had been returned by the court clerk. The absence of such a conformed copy should have put Brar on notice that something was wrong and needed correction. (See *Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 478 [58 Cal.Rptr. 249, 426 P.2d 753] ["The 'surprise' contemplated by [Code of Civil Procedure] section 473 . . . is some condition or situation in which a party is unexpectedly placed to his injury, without any fault of his own, under circumstances which he was not reasonably called upon to anticipate and which ordinary foresight could not have guarded against."].) Brar's indifference to the absence of a conformed copy is grounds for a reasonable inference that Brar never put an answer in his mailbox in the first place. The Attorney General's litigation went directly to the way Brar was alleged to earn his living; it wasn't some overdue electric bill. If he ever had incentive to make sure that an answer got filed in any case he worked on, it was certainly *this* case.

### IV. *Other Matters; Outstanding Motions*

For convenience sake, we grant all outstanding motions for judicial notice and motions to augment the record.

For his part, Brar wants us to recognize that the Attorney General has filed recent litigation concerning lead jewelry, canned tuna fish which may contain mercury, and french fries and other foods cooked in hot oil which may contain a substance which may be carcinogenic. While we take judicial notice of this litigation, so what? The point of the request is merely to make a rhetorical point giving a patina of respectability to the lawsuits that Brar himself has filed. (As his reply brief says, "The Appellant has mimicked the actions of the Respondent. . . . A mere glance at the complaints that both parties have requested this Court to take judicial notice of show that both the Respondent and the Appellant engage in the same conduct.") At the most, the Attorney General's recent litigation offers Brar a platform for a two-wrongs-make-a-right argument. But such an argument only goes to the *merits* of the Attorney General's actions against Brar, and we are not concerned with the merits in this review of an order denying a motion to set aside a default. Thus, even assuming, for sake of argument, that the Attorney General has brought all of this litigation unwisely, or even frivolously, it does not follow that the trial court abused its discretion in refusing to set aside *Brar's* default.

The Attorney General, on the other hand, wants us to recognize recent action taken against Brar in the State Bar Court (Brar has been put on probation for a two-year period), as well as a recent filing in Los Angeles (just prior to the State Bar Court's decision) which indicates that Brar has turned his attention away from nail salons to liquor stores with point-of-access pay machines that charge a fee; apparently his new area of concentration is the Consumer Legal Remedies act as distinct from the unfair competition law.[2] This information is more relevant, because it indicates that Brar continues to use the legal system to make money for himself by using a relative (his wife) to sue large numbers of small businesses and unilaterally extract money from them before any judge actually considers the matter— essentially the same scam as used by the Trevor Law Group. The continuation of the scam in other areas of law inferentially supports the idea that Brar never put his answer in the mailbox in the first place: Brar makes his living by the *disruption* of small businesses posed by the fact of litigation filed against them and their need to pay a nuisance settlement to avoid further distraction. And while the Attorney General's litigation against him meant that the game was over, a few extra settlements might still be eked out before the Attorney General's judgment became final. That need for time was certainly motive enough to fabricate a story about putting pleadings in a home mailbox and their all-too-convenient disappearance by way of a possible theft.

---

[2] We express no opinion as to whether Brar's most recent litigation is, in substance, violative of the injunction which is the subject of this appeal and therefore substantively unfair competition litigation in a different form.

## V. *Relief in Excess of Complaint*

Brar also attacks the judgment itself on the ground that it exceeds the relief requested in the complaint. (See Code Civ. Proc., § 580, subd. (a).) Part of his (granted) motion to augment the record is to include the complaint within the record.

■ Preliminarily, we must reject the Attorney General's contention that the issue of the judgment exceeding the scope of the judgment cannot be considered now, in an appeal from the denial of a set aside motion. Because of its jurisdictional nature, the claim that a judgment exceeds the relief demanded in the complaint can even be raised for the first time on appeal. (*National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 417 [214 Cal.Rptr. 113]; *Janssen v. Luu* (1997) 57 Cal.App.4th 272, 274, fn. 2 [66 Cal.Rptr.2d 838] [a claim a judgment is void because it is in excess of the relief requested in the complaint may be raised at any time]; *Petty v. Manpower, Inc.* (1979) 94 Cal.App.3d 794, 798–799 [156 Cal.Rptr. 622]; accord, *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493 [165 Cal.Rptr. 825, 612 P.2d 915] ["consideration of the merit of defendants' challenge to the judgment as violative of" section 580 of the Code of Civil Procedure "is appropriate"].) And while the more traditional way of attacking a judgment is by way of motion to vacate, set aside motions have in fact also been successfully used to raise the issue of judgments in excess of relief requested. (See *Pino v. Campo* (1993) 15 Cal.App.4th Supp. 1 (maj. opn. of Rylaarsdam, P. J.).) And in fact Brar did indeed raise the issue of excessive relief in his motion to the trial court.

There are two ways that Brar claims the judgment exceeds the relief requested in the complaint. First, he claims that the complaint only sought to stop him from filing suits under section 17200 of the Business and Professions Code—the unfair competition law—while the judgment extends to both sections 17200 and 17500—the unfair competition law *and* the false advertising law. Second, he claims that the $1,787,500 in civil penalties payable to California's Attorney General set forth in the judgment exceeds the complaint which requested "no less than" $1 million in civil penalties, and was vague in not putting him on notice of the amount demanded.

The first point is meritorious. The complaint requested that Brar be "restrained and enjoined from: [¶] A. Failing to dismiss all suits brought under the authority of Business and Professions Code section 17200, *et seq.*" We cannot agree with the Attorney General that "et seq." is elastic enough to

stretch all the way to section 17500. Section 17200 begins part 2 of division 7 of the Business and Professions Code, and deals with unfair competition, while section 17500 begins part 3 of the same code and deals with representations to the public. The Legislature evidently thought that false advertising was sufficiently distinct from unfair competition so as not to be lumped even in the same part of a division. Nor does the body of the complaint contain any references to section 17500 or the false advertising law. The complaint thus did not give fair warning that Brar was subject to being enjoined from filing false advertising suits under section 17500 as well as unfair competition suits under section 17200.

The second point, however, is not meritorious. The exact request as regards civil penalties from the complaint was: "Pursuant to Business and Professions Code section 17206, that defendants and each of them be assessed a civil penalty of $2,500.00 for each violation of Business and Professions Code section 17200 as proven at trial, but in an amount of not less than $1,000,000.00." The relief obtained, as set forth in the default judgment, is: "Defendant Harpreet Brar is ordered to pay One Million, Seven Hundred Eighty Seven Thousand, Five Hundred Dollars ($1,787,500.00) in civil penalties, by certified check, payable to the Attorney General of California, within thirty (30) days of the date entry of this Final Judgment."

■ The rules derived from section 580 of the Code of Civil Procedure governing the issue of relief given in default judgments in excess of that requested in the complaint have been helpfully set forth in *National Diversified Services, Inc. v. Bernstein, supra,* 168 Cal.App.3d 410. Except in personal injury or wrongful death cases, courts must look to the prayer of the complaint *or* to "allegations in the body of the complaint of the damages sought" to determine whether a defendant has been informed of the "maximum liability" he or she will face for choosing to default. (*Id.* at pp. 417–418.)

The facts in *National Diversified* are instructive for us. The case involved a trade of a boat, valued at $22,500, by the plaintiff, in return for two Ferraris worth about $75,000 from the defendants, with the plaintiff owing the difference. The plaintiff conveyed the boat, but the defendants did not turn over the Ferraris. The complaint sought specific performance, or, alternatively, damages "in excess of" $10,000 plus return of the boat. The default judgment was for about $57,000, which consisted of $45,600 for not turning over the Ferraris, and another $5,000 for their loss of use, and about $6,200 in boat repair.

The *National Diversified* court began its analysis by saying that if it "only" considered the allegation of "damages in excess of $10,000 . . . it would be improper to grant a default judgment in excess of $10,000." (*National Diversified, supra,* 168 Cal.App.3d at p. 418.) But despite that limitation, the court also looked to the allegations in the body of the complaint to determine whether a greater amount than $10,000 was sought. And the answer was yes—"but not to the extent of upholding the judgment" for the roughly $57,000 it provided. (*Ibid.*) The plaintiff in *National Diversified* "did not identify as damages in connection with the restitution claim any amount near the $55,000 awarded." The bottom line was that the court modified the judgment on appeal, and the modified judgment was for an amount in excess of $10,000—almost three times that amount in fact ($32,500). The modified judgment represented the value of the boat, $22,500, plus $10,000 for its detention. (*Id.* at p. 419.) The body of the complaint had given fair warning of at least that exposure.

In the matter before us, the Attorney General's complaint alleged that Brar had filed some 14 shakedown lawsuits.[3] The complaint then says that as to three of those lawsuits, 1,500 nail salons were involved. Here is the exact language: "Defendants have filed approximately 14 lawsuits. In at least three of these actions defendants have named as a defendant one nail salon and 500 nail salons identified only as Doe defendants (i.e., a total of three named defendant nail salons and 1500 DOES). Defendants have also sued small markets and retail stores."

In that regard, the complaint detailed how the use of Doe pleadings was integral to the scam. By filing one lawsuit against one business, and then quickly adding a large number of Does, Brar was able to save on filing fees and ignore rules of joinder and venue.

▮ The complaint also seeks penalties under Business and Professions Code section 17206, which provides for penalties of $2,500 "for each violation" of the unfair competition law. (We won't dwell too much on the irony that Brar himself is the target of the very law which, according to the Attorney General's complaint, he misused against others.) The complaint thus gave fair warning of an exposure of at least $2,500 times 1,500, which is $3.75 million, which is more than the $1,785,000 in the default judgment.

---

[3] Shakedown is our word, but the complaint itself contains equally strong allegations of extortionate behavior. E.g., "Defendants are actually in the business of extracting money, primarily from small businesses, under the guise of purporting to enforce consumer protection laws by engaging in the scheme described in paragraphs 11 through 23 below." The complaint also avers that the defendants have engaged in a "settlement scam" with the businesses who are sued.

## VI. *Disposition*

The order denying the set aside motion is affirmed. The default judgment, however, is hereby modified on appeal (as the court did in *National Diversified, supra*, 168 Cal.App.3d at p. 419) to delete the words "or 17500" in paragraph 2.A. thereof, and to delete the words "or 17535" in paragraphs 2.D, 2.E., 2.F., and 2.G. thereof. The respondent shall recover costs on appeal.

Rylaarsdam, J., and Ikola, J., concurred.

A petition for a rehearing was denied December 27, 2005, and appellant's petition for review by the Supreme Court was denied February 22, 2006, S140299.