Filed 9/3/14  Richardson v. Bank of New York Mellon CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BENNING A. RICHARDSON et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>BANK OF NEW YORK MELLON<br>CORPORATION et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B248649<br>(Super. Ct. No. CV128304)<br>(San Luis Obispo County) |

The facts giving rise to this case found their way into a complaint filed against appellants Benning and Christopher Richardson and others in 2003.  The Richardsons had become embroiled in a dispute with a business associate over the ownership of several thousand shares of bank stock.  In 2007 that case was fully and finally settled and dismissed as trial was about to begin.  Three years later the Richardsons, evidently dissatisfied with the earlier result, sought to reshape the earlier outcome based on the same transaction.  They sued respondents—the banks and the banks' lawyers and employees—for refusing to redeem some of the stock while the prior litigation was pending notwithstanding court orders and a subsequent settlement agreement preventing respondents from doing so.  This they cannot do.  The trial court granted respondents' anti-SLAPP motions, dismissed the case, and awarded attorney fees. We affirm.

FACTS AND PROCEDURAL HISTORY

*Prior Litigation over the Mid-State Shares*

On July 21, 2003, William J. Vetter, Jr., filed a complaint against Benning and Christopher Richardson, Mid-State Bancshares (Mid-State), Mellon Investor Services (MIS), and George Manus, alleging causes of action for conversion, elder abuse, and breach of fiduciary duty. As alleged in the complaint, Benning Richardson worked for Vetter as a consultant helping Vetter to obtain a permit for a recycling business. Richardson had a limited power of attorney to act on Vetter's behalf in the permitting process.[1] By altering the power-of-attorney agreement, Richardson transferred 17,436 shares of Mid-State stock from Vetter to himself or other defendants. These shares represented Vetter's life savings and were unconnected with Richardson's consulting duties. Vetter sought to recover the shares' value.

The next day, the trial court issued a temporary restraining order (TRO) enjoining the defendants in the prior case from "[s]elling, transferring, conveying, assigning, issuing dividends, or otherwise dealing with stocks or other securities in Mid-State Bancshares held in the name of or for the benefit of" Vetter, his son William III, his daughter Vivian, Benning or Christopher Richardson, or George Manus.

Pursuant to a memorandum signed on August 22, 2003 (the bank settlement), Vetter agreed to dismiss Mid-State and MIS from the action. In exchange, Mid-State and MIS agreed not to take any further action with the stock at issue "until further order of the court." Five days later, the trial court issued a preliminary injunction prohibiting the Richardsons and "their officers, agents, employees, representatives, and all persons acting in concert or participating with them" from dealing with the stock during the pendency of the action.

After four years of litigation, Vetter and the Richardsons reached a settlement. Under its terms, memorialized in a September 6, 2007, order signed by the

---

[1] Unless otherwise specified, "Richardson" refers to Benning Richardson.

court and the parties (settlement order),[2] Mid-State and MIS would transfer approximately 84 percent of the proceeds from the shares to Vetter and approximately 16 percent to Richardson.[3] Christopher Richardson, who held 11,736 shares in his name, would be allowed to keep the dividend proceeds from those shares. Dividends that had accrued to the 3,700 shares held in the names of Vetter's children would be reissued and paid to the Vetter family. Upon completion of these terms, the parties would dismiss the entire action with prejudice. They did so on November 28, 2007. The Richardsons have never moved to set aside the dismissal or otherwise attack the settlement made in the prior case.

<u>Current Litigation over the Mid-State Shares</u>

In June 2010, the Richardsons commenced the current case by filing a complaint in the San Francisco Superior Court against the corporate successors of MIS and Mid-State, their attorneys, several individual employees, and Vetter, alleging 10 causes of action.[4] Included were allegations that (1) the bank settlement with Vetter was illegal; (2) the default that at times during the prior case was entered against Vetter on the Richardsons' cross-complaint terminated Vetter's action against the Richardsons and rendered the preliminary injunction without force of law; and (3) MIS falsely represented to Christopher Richardson that a court order prevented it from redeeming his stock certificates in May and June 2007.

---

[2] Vetter's counsel signed on behalf of the Vetter family. Benning Richardson, who had previously represented to the court that he had power of attorney over the shares in Christopher's name, signed on behalf of himself and Christopher.

[3] As the result of a recent merger, Mid-State common stock had been terminated. Shareholders were entitled to receive cash for their shares.

[4] The complaint was unverified. However, five months later, in a declaration attached to an opposition to an individual defendant's motion to quash service, Benning Richardson stated, "I have read the complaint and know the contents thereof, and the same is true of my own knowledge except a [*sic*] to the matters, which are therein state [*sic*] upon information and belief, and as to those matters, I believe it to be true." The Richardsons claim that this statement satisfied the requirements necessary to verify their complaint. We need not resolve the issue.

After venue was transferred to San Luis Obispo County, respondents answered the complaint with general denials. The parties filed separate case management statements. The Richardsons asserted in their statement that "[t]he parties have not stipulated to any form of arbitration or to any other form of alternative dispute resolution (ADR) process. It is suggested that we stipulate to any of the above except binding arbitration." The parties agreed to participate in mediation and the court ordered it completed by May 13, 2013.

On December 28, 2012, respondents The Bank of New York Mellon Corporation, BNY Shareholder Services, MIS, Rabobank, N.A., Mid-State, VIB Corp, Ronald Blok, and Marlene Weeks (bank respondents) and Andre, Morris & Buttery, PLC and Kevin D. Morris (attorney respondents) filed separate special motions to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP motions). When the clerk set a hearing date of February 5, 2013, more than 30 days after the motions were served, respondents filed ex parte applications to have the court either specially set an earlier date for the hearing or accept the clerk's date as timely.[5] The court granted the latter relief.

The Richardsons filed a motion for judgment on the pleadings, which was heard on the same day as the anti-SLAPP motions. The Richardsons argued that their complaint was verified and respondents' unverified answer should be stricken. Respondents disputed that the complaint was verified but moved to amend their answers with verifications and attached proposed pleadings.

The trial court granted the anti-SLAPP motions and dismissed the action with prejudice, finding that the Richardsons' claims arose from respondents' protected activity in the prior case and that the Richardsons could not overcome respondents' defenses of the litigation privilege (Civ. Code, § 47, subd. (b)) and judicial estoppel. The court denied the Richardsons' motion for judgment on the pleadings as moot, but found that their arguments also lacked merit because respondents' purported failure to verify

---

[5] An anti-SLAPP motion normally should be set for hearing "not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." (Code Civ. Proc., § 425.16, subd. (f).)

4

their answers was a curable defect.  In a separate order, the court awarded $33,203 to bank respondents and $17,938 to attorney respondents in attorney fees.

The Richardsons appeal the trial court's orders granting respondents' ex parte applications to hear the anti-SLAPP motions more than 30 days after service of the motions, granting respondents' anti-SLAPP motions, denying the Richardsons' motion for judgment on the pleadings, and granting respondents' motions for attorney fees.

DISCUSSION

*Hearing Date for the Anti-SLAPP Motions*

A trial court's decision about when to hear an anti-SLAPP motion, like all rulings implicating a court's management of its courtroom calendar and docket, is reviewed for abuse of discretion.  (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 916 fn. 6; see also *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [reviewing ruling on application to file late anti-SLAPP motion for abuse of discretion].)

Although the anti-SLAPP statute "requires the court clerk to schedule a special motion to strike for a hearing no more than 30 days after the motion is served if such a hearing date is available on the court's docket, [it] does not require the moving party to ensure that the hearing is so scheduled and does not justify the denial of a special motion to strike solely because the motion was not scheduled for a hearing within 30 days after the motion was served."  (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1349.)  Accordingly, ex parte applications for an earlier hearing date or court validation of the existing date were unnecessary.

The Richardsons argue that respondents failed to comply with their "meet and confer" obligations prior to the initial case management conference.  Having failed to raise this issue below, they have forfeited it.  (*Medical Board of California v. Chiarottino* (2014) 225 Cal.App.4th 623, 632.)  Regardless, respondents' claimed failure to meet and confer prior to the case management conference is not relevant to the date of the hearing on their anti-SLAPP motion.  Similarly, respondents' agreement to attend private mediation with the Richardsons has no bearing on the anti-SLAPP motion's hearing date.  Nothing in the record, including the trial court's mediation order, suggests that the case

5

was stayed pending the outcome of mediation or that respondents agreed to forgo their right to file a timely anti-SLAPP motion.

The Richardsons also contend that their complaint was verified and respondents failed to file verified answers. Assuming without deciding that the Richardsons' verification was proper, respondents' failure to verify their answer was immaterial to both the hearing date of the anti-SLAPP motion and its resolution. Leave to amend an answer to add a verification should be granted liberally. Under these circumstances, where respondents effectively had no notice that the complaint was verified,[6] the trial court would have been obligated to grant leave to amend had the issue not become moot. (See *Jenssen v. R.K.O. Studios* (1937) 20 Cal.App.2d 705, 707.) Moreover, the timing of an anti-SLAPP motion is not dependent on whether the answer has been filed. (See *People ex rel. Lockyer v. Brar* (2005) 134 Cal.App.4th 659, 661-662 [filing anti-SLAPP motion before answer stays proceedings until motion and any appeal are resolved].)

The trial court did not abuse its discretion in its selection of a hearing date for the anti-SLAPP motions.

### *Anti-SLAPP Motions*

"The analysis of an anti-SLAPP motion . . . involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. ([Code Civ. Proc.,] § 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order

---

[6] (See *ante*, fn. 4.)

6

granting or denying a motion to strike under section 425.16 de novo. [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

The Richardsons claimed damages in this case based on Mid-State's and MIS's refusal to redeem the shares held in Christopher Richardson's name during the pendency of the prior case. Thus, all of the Richardsons' claims arise out of respondents' statements concerning their compliance in the prior case with the bank settlement, the preliminary injunction, or the settlement order. These activities are expressly protected by the anti-SLAPP statute, which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (Code Civ. Proc., § 425.16, subd. (e)(2).) A statement or writing is "in connection" with litigation if it "relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266, fn. omitted.)

Turning to the second prong of the analysis, the Richardsons could not have prevailed on their claims. At all relevant times, there was a valid TRO, preliminary injunction, or settlement order in place that prevented the bank from redeeming the stock shares held in Christopher Richardson's name other than as eventually directed in the settlement order. The Richardsons' arguments that Vetter's periodic default on their cross-complaint in the prior case rendered the preliminary injunction void and that Christopher Richardson's failure to sign the settlement order rendered it void, aside from lacking merit,[7] are improper collateral attacks on a final judgment. (*Singh v. Lipworth*

_____

[7] As to the first argument, a cross-complaint creates an action distinct and separate from the complaint. Resolution of one does not affect the independent existence of the other. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 52.) The second argument fails because in the prior case Benning Richardson represented in open court that he had legal authority to sign the settlement order on Christopher Richardson's behalf. He is now judicially estopped from claiming otherwise. (See *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 [judicial estoppel applies when in a judicial proceeding a party takes a position that is not the result of ignorance, fraud, or mistake, and the

(2014) 227 Cal.App.4th 813, 829.)

The trial court was correct to grant the anti-SLAPP motions. Because that ruling resulted in the complaint being stricken, the trial court was also correct to dismiss as moot the Richardsons' motion for judgment on the pleadings.

### *Attorney Fees*

The Richardsons contend that the trial court erred in awarding attorney fees because respondents' fee motions were filed after the Richardsons filed their notice of appeal. In addition, they challenge the award of fees for work they claim was performed before the case was transferred to San Luis Obispo County. A trial court's ruling on the propriety and amount of attorney fees is reviewed for abuse of discretion, but the determination whether the court had the statutory authority to make such an award is a question of law we review de novo. (*Carpenter v. Jack In The Box Corp.* (2007) 151 Cal.App.4th 454, 460.)

A party entitled to attorney fees based on a successful anti-SLAPP motion may file a motion seeking such fees at any time until the court enters judgment. (*Carpenter v. Jack In The Box Corp., supra,* 151 Cal.App.4th at p. 468.) Bank and attorney respondents respectively moved for fees on June 19, and July 9, 2013. The trial court awarded fees on September 3 and entered judgment on September 30, 2013. The fee motions were timely.

The Richardsons have forfeited their argument concerning the amount of fees by failing to file an opposition in the trial court. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) In any event, the trial court rejected a portion of the fees initially claimed by respondents for

---

tribunal accepts it as true, and the same party then takes a totally inconsistent position in a subsequent proceeding].)

8

work that was not done in direct preparation of the anti-SLAPP motions.  The court did not abuse its discretion.

DISPOSITION

The judgment is affirmed.  Costs to respondents.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Jac Crawford, Judge

Superior Court County of San Luis Obispo

———————————

Benning A. Richardson and Christopher A. Richardson, in pro. per., for Appellants.

Andre, Morris & Buttery, Kathryn M. Eppright, Collette A. Hillier, for Respondents The Bank of New York Mellon Corporation, BNY Mellon Shareowner Services, and its transfer agent, Mellon Investor Service, Rabobank, N.A., and their predecessors-in-interest, Mid-State Bancshares, VIB Corp, Ronald Blok, Marlene Weeks; Nemecek & Cole, Michael McCarthy, Mark Schaeffer, for Respondents Andre, Morris & Buttery, PLC and Kevin D. Morris.