Filed 12/13/21  Chavis v. San Joaquin General Hospital CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| REGINALD CHAVIS, | C089028 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUMM20180006197) |
| v. | |
| SAN JOAQUIN GENERAL HOSPITAL et al., | |
| Defendants and Respondents. | |

SUMMARY OF APPEAL

Plaintiff and Appellant Reginald Chavis appeals from a judgment and order in which the trial court denied his petition (the Petition) to proceed with an action against San Joaquin General Hospital (the Hospital), a government entity, and Dr. Nikolaj Wolfson after Chavis's application to present a late Government Claims Act (Gov. Code, § 810 et seq.; statutory section citations that follow are to the Government Code unless otherwise stated) claim to collect damages from the Hospital was rejected (see § 946.6). Chavis's cause of action against Wolfson and the Hospital stems from a knee

1

replacement correction surgery performed by Wolfson. Wolfson operated on Chavis more than four years before Chavis presented his application to file a late claim, and Chavis alleges he discovered Wolfson had been negligent approximately 10 months before he filed the application to submit a late claim. We affirm the trial court's decision.

FACTS AND HISTORY OF THE PROCEEDINGS

Except as otherwise stated, the facts stated here are as alleged in documents filed by Chavis in the trial court.

Facts Preceding Alleged Discovery of Wolfson's Purported Negligence

On March 10, 2014, Chavis, who was an inmate and remained incarcerated at the time he filed this action, underwent knee replacement surgery at the Hospital. Dr. Carmelino Galang performed this first surgery. Chavis alleges Galang did not properly place his knee replacement in the first surgery, resulting in Chavis suffering severe pain and necessitating a second surgery on June 3, 2014. Wolfson performed the second surgery. After the second surgery, Chavis alleges he continued to suffer difficulties and pain in his knee.

Beginning on February 16, 2015, Chavis unsuccessfully attempted to serve the necessary public entities with a claim for damages due to personal injuries suffered as a result of the negligent acts of Galang as an employee of the Hospital.[1] The claim Chavis presented in February 2015 did not identify Wolfson or the June 2014 operation as contributing to Chavis's injury or continued suffering.

Chavis filed an action against the Hospital and Galang on May 31, 2017. Like the claim he attempted to submit to the Hospital, the initial complaint alleges negligence in

---

**1** It appears Chavis served the wrong public entity with the claim. It also appears he never presented an application to submit a late claim with respect to the Galang surgery, though he first tried to submit the claim more than six months after he met with Wolfson and learned about the alleged errors in the first surgery.

2

the performance of and harm associated with the Galang surgery. Wolfson was not named as a defendant in the action, and the initial complaint does not allege Chavis was harmed in the June 2014 surgery.

October 2017 Alleged Discovery of Wolfson's Negligence

In October 2017, a third doctor, Dr. Casey, examined Chavis. At that time, Chavis discovered Wolfson had not used "replacement parts during the second procedure like he should have." Chavis alleges that Wolfson's negligence in not using replacement parts in the second surgery contributed to Chavis's suffering and problems with his knee.

Attempts to Seek Damages for Wolfson's Actions Beginning in June 2018

On June 15, 2018, more than four years after Wolfson performed the second surgery and approximately eight months after meeting with Casey—and without first filing a claim with the County or hospital under the Government Claims Act—Chavis filed a First Amended Complaint in the action in which he named Wolfson as an additional defendant for the first time.

In August 2018, approximately 10 months after meeting with Casey, Chavis submitted an application for permission to present a late claim for damages (the Application) from the Hospital as a result of Wolfson's alleged negligence in his performance of the June 2014 surgery. In the Application, Chavis states the "failure to file a timely claim was the result of claimant's attorney's mistake. Counsel for claimant erroneously believed that, since there was already an existing action against" the Hospital and Galang "regarding injuries suffered due to negligent total knee replacement, Dr. Wolfson could be added as a party without further notice to the county." In the declaration in support of the Application, Chavis's counsel states that, upon discovering Wolfson's negligence may have contributed to Chavis's injury, he "simply amended the Complaint to add Dr. Wolfson." Neither the Application nor the supporting declaration suggest Wolfson intentionally or fraudulently concealed from Chavis that he did not use

3

replacement parts in the second surgery, instead negligently re-using the existing parts. Chavis's Application was denied on August 27, 2018.

On October 4, 2018, Chavis filed the Petition. In the Petition, Chavis alleged an "incident of medical negligence" occurred at the Hospital on June 3, 2014. Chavis alleges he did not timely file a claim due to the mistake, inadvertence, or excusable neglect of his attorney, and he reiterates that his attorney was under the mistaken belief that he did not need to file a new claim regarding Wolfson because there was already an action pending against the Hospital and Galang. He does not allege that his ability to file a claim was delayed by intentional concealment or fraud by Wolfson.

On October 9, 2018, following the sustaining of a demurrer to the First Amended Complaint, which did not address the action against Wolfson, Chavis filed the Second Amended Complaint. The Second Amended Complaint continues to allege negligence by Wolfson in failing to use replacement parts in the corrective surgery.

In addition to opposing the Petition, the Hospital, Wolfson, and Galang demurred to the Second Amended Complaint. The trial court sustained the demurrer and denied the Petition as moot "based on [the] concurrent demurrer being sustained without leave to amend." In the order after hearing sustaining the demurrer, the court stated, "Plaintiff's causes of action accrued in June 2014. His original defective claim was filed February 2, 2015, 8 months later. [¶] His attempt to serve the claim on San Joaquin County Health Services was defective. [¶] It does not appear that Plaintiff can amend his complaint to allege compliance with the Tort Claims Act." The trial court then entered a judgment of dismissal in favor of all the defendants, including Wolfson.

Chavis filed a motion for reconsideration, which the trial court denied. Defendants served Chavis with a notice of entry of judgment of dismissal and a notice of entry of order after hearing denying Chavis's motion for reconsideration on March 4, 2019.

4

Appeal and Supplemental Briefing

On March 8, 2019, Chavis filed a notice of appeal of judgment of dismissal after an order sustaining a demurrer. However, in his opening brief, Chavis identifies the relief requested as a ruling that would "set aside the order of the [trial court] dismissing Appellant's Petition for Relief from California *Government Code*, and further seeks leave to pursue a civil action against San Joaquin General Hospital." (Original italics.) Thus, it appears Chavis's appeal is more accurately described as an appeal of the trial court's denial of the Petition.

In the initial briefing, despite the fact that the Wolfson surgery was performed more than four years before Chavis made any effort to make a claim or file an action regarding Wolfson's actions, the parties did not address the applicability of Code of Civil Procedure section 340.5, which establishes a three-year outer limit on when a lawsuit can be filed against a public health care provider absent certain exceptions. (See *Roberts v. County of Los Angeles* (2009) 175 Cal.App.4th 474, 481.) Also, the parties did not make arguments or factual statements suggesting that intentional concealment or fraud by Wolfson delayed Chavis's discovery of Wolfson's alleged negligence. As such, we requested supplemental briefing from the parties as to whether Chavis's action against Wolfson is time barred.

In his supplemental briefing, Chavis takes the position that the three-year cap on when he could bring an action against Wolfson was tolled due to the intentional concealment and/or fraud by Wolfson, which are grounds identified in the statute that will toll the three-year cap. Though he made no such allegations of intentional concealment or fraud in the trial court, he argues we ought to allow him to amend his complaint against Wolfson to include such allegations.

In response, defendants argue Chavis was aware or ought to have been aware of Wolfson's alleged contribution to his injury for more than a year before he filed his

5

complaint, and, therefore, other statutory limits contained in the Government Claims Act bar the action. Assuming the statute of limitations contained in Code of Civil Procedure section 340.5 was tolled, we will address the merits of whether the Petition was correctly denied.

## DISCUSSION

## I

### *Government Claims Act Process*

Under the Government Claims Act (tit. 1, div. 3.6), with certain exceptions not applicable here, a person who purports to have a cause of action for "money or damages against [a] local public entit[y]" (§ 905) must present a claim to that entity, and the claim must be "acted upon by the board, or . . . deemed to have been rejected by the board" (§ 945.4) before the claimant can file a complaint in court against that public entity. "A claim relating to a cause of action . . . for injury to [a] person . . . shall be presented . . . not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).)

An action for injury against a health care provider based upon the professional negligence accrues when the "plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (Code Civ. Proc., § 340.5; see also Gov. Code, § 901 ["the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon"].)

Chavis argues the time he had to file a claim was tolled by the "discovery rule," which dictates "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.)

6

This is only partially correct.  Under Code of Civil Procedure with respect to medical malpractice actions, "[*i*]*n no event* shall the time for commencement of legal action exceed three years unless tolled for any of the following:  (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."  (Code Civ. Proc., § 340.5, italics added.)  "A plain reading of the language of [Code of Civil Procedure] section 340.5 compels the conclusion that the judicially declared 'discovery rule' previously applied to actions for medical malpractice under the former statute of limitations is now subject to the outer time limitation imposed on substantive liability by that section."  (*Blake v. Wernette* (1976) 57 Cal.App.3d 656, 660.)

When a person fails to present their claim arising out of an injury to the applicable public entity within six months of claim accrual, they may make an application to the public entity for leave to present a late claim.  (§ 911.4, subd. (a).)  With exceptions not applicable here, the application for leave to file a late claim must be filed, "within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim."  (§ 911.4, subd. (b).)  The governing board of the local entity then has 45 days to grant or deny the application.  (§ 911.6, subd. (a).)  If "[t]he failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified" the governing board of the local entity "shall grant the application."  (§ 911.6, subd. (b)(1).)

If the board denies the application for leave to submit a late claim to the public entity, "a petition may be made to the court for an order relieving the petitioner from" the requirement to present a claim to the entity before bringing an action in court.  (§ 946.6.)  The petition must be filed within six months of the public entity denying the application for leave to file a late claim and include certain information regarding the alleged injury and the efforts to file a claim with the public entity.  (§ 946.6, subd. (b).)  If the "failure

7

to present the claim was through mistake, inadvertence, surprise, or excusable neglect," and "the court finds that the application" to make a late claim "was made within a reasonable time not to exceed" one year, then the "court shall relieve the petitioner from the requirements" to present the claim to the public entity, "unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the" requirement to present the claim to the public entity before filing an action. (§ 946.6, subd. (c)(1).) "The court shall make an independent determination upon the petition. The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition." (§ 946.6, subd. (e).)

Under section 950.2, "a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of [the Government Claims Act] or under Chapter 2 (commencing with Section 945) of Part 4 of [the Government Claims Act]." Thus, the claim presentment requirements of the Government Claims Act are "a condition precedent to a tort action against either the employee or the public entity." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838.)

II

*Standard of Review*

"The decision to grant or deny a petition seeking relief under section 946.6 is within the sound discretion of the trial court and will not be disturbed on appeal except for an abuse of discretion." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275.) "This rule, however, does not preclude reversal of an order denying relief where adequate cause for such relief is shown by uncontradicted evidence or affidavits of the petitioner, nor should it be employed to defeat the liberal policies of

8

remedial statutes designed for that purpose. [Citation.] It has often been said that denials of such relief by the trial court are scanned more carefully than cases where the court granted the relief, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." (*Viles v. State* (1967) 66 Cal.2d 24, 28-29.)

III

*Chavis Cannot Show the Trial Court Abused Its Discretion in Denying the Petition*

Even if we were to agree that the three-year cap for Chavis to bring an action alleging Wolfson's negligence was tolled due to fraud and/or intentional concealment by the Hospital and Wolfson, we still could not find that the trial court abused its discretion when it denied the Petition. Chavis has failed to demonstrate by a preponderance of the evidence that he filed the Application more than six months after he discovered Wolfson's alleged negligence as a result of "mistake, inadvertence, surprise or excusable neglect" as contemplated by the Government Claims Act. (§§ 911.6, subd. (b)(1); 946.6, subd. (c)(1).)

As a preliminary matter, some of Chavis's arguments as to why we should grant him relief from the trial court's denial of the Petition appear to be predicated on statements allegedly made by the trial court during oral arguments in that court. However, Chavis does not provide us with a record of this oral proceeding. Under California Rules of Court, rule 8.120(b), "[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137." "Although in certain instances a reporter's transcript may not be necessary, including if an appeal involves a legal issue requiring de novo review [citation], on issues such as the instant one involving the abuse

9

of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable." (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79.)

Chavis takes the position that he filed the Application more than six months after he learned Wolfson did not use replacement parts due to an attorney error of law, and application for leave to file a late claim, "when grounded in attorney error, shall be granted." This position rests on an oversimplification of the statutory standards a claimant must meet before either an agency must grant leave to file a late claim pursuant to section 911.6, subdivision (b)(1); or a court must grant a petition relieving the claimant from the Government Claims Act requirement pursuant to section 946.6, subdivision (c)(1).

In order to obtain relief from either the local agency under section 911.6, subdivision (b)(1), or the court under section 946.6, subdivision (c)(1), the claimant must demonstrate both (1) that the application to file a late claim was presented to the agency "within a reasonable time not to exceed one year after the accrual of the cause of action" (§ 911.4, subd. (b); see also § 946.6, subd. (c)); and (2) that "[t]he failure to present the claim was through mistake, inadvertence, surprise or excusable neglect" (§§ 911.6, subd. (b)(1); 946.6, subd. (c)(1)). To succeed on a section 946.6, subdivision (c)(1), petition, the petitioner "must . . . demonstrate [these] two essentials by a preponderance of the evidence." (*City of Fresno v. Superior Court* (1980) 104 Cal.App.3d 25, 32.) "In determining whether relief is warranted, the court will consider the petition, any affidavits submitted in support of or in opposition to the petition, and any other evidence presented at the hearing." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1777-1778; see also § 946.6, subd. (e).) Here, even assuming Chavis's action did not accrue until he met with Casey, Chavis has failed to satisfy the second prong.

"The showing required of a petitioner seeking relief because of mistake, inadvertence, surprise or excusable neglect" under the Government Claims Act "is the same as required under section 473 of the Code of Civil Procedure for relieving a party

10

from a default judgment. [Citation.] [¶] An examination of the cases applying section 473 of the Code of Civil Procedure discloses that not every mistake of law is excusable [citations] but that an honest mistake is excusable, the determining factor being the reasonableness of the misconception [citations]." (*Viles v. State, supra,* 66 Cal.2d at p. 29.)

In both his Application and the Petition, the only "mistake" Chavis identified which caused him to file his Application more than six months after he allegedly learned of Wolfson's role in his injury was a mistake of law on the part of his attorney, who Chavis claims erroneously believed the filing requirements of the Government Claims Act mimicked those of notice requirements governing medical malpractice actions. Yet, " '[m]ere ignorance of the law, at least where coupled with negligence in failing to look it up, is not sufficient cause to allow a petitioner to file a late claim against a public entity [citations].' (*Martin v. City of Madera* (1968) 265 Cal.App.2d 76, 79.)" (*Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432, 439; see also *Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 476 [noting that, "[i]n cases construing section 473 of the Code of Civil Procedure, it has been held that 'Ignorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief [citations] and such facts will certainly sustain a finding denying relief. [Citations.]' "].)

Chavis and his counsel cannot escape the requirements of the Government Claims Act simply by claiming they failed to look into the specific requirements of the act. Indeed, the record shows that by the time Chavis met with Casey, he and his counsel had already become familiar with the existence of the Government Claims Act.[2] On this basis, particularly in light of the fact that we do not know what was said by the court

---

[2] In his Second Amended Complaint, Chavis detailed the efforts he made, beginning in February 2015, to notify the Hospital about his potential claim.

during the hearing in the trial court, we find that Chavis cannot show the trial court abused its discretion in dismissing his Petition.

## DISPOSITION

The judgment and order denying the Petition are affirmed.

 

_____
HULL, Acting P. J.

We concur:

_____
DUARTE, J.

_____
HOCH, J.